UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                      CASE NO: 2:15-cr-59-FtM-38DNF

YOHANY HERNANDEZ-
HERNANDEZ

### ORDER[1]

This matter comes before the Court on the United States of America's ("the Government") Motion for Revocation of the Magistrate Judge's Order Granting Conditions of Release (Doc. #23) filed on May 18, 2015. As per the Court's Order to expedite, Defendant, Yohany Hernandez-Hernandez, filed a Response in Opposition (Doc. #27) on May 21, 2015.

On May 15, 2015, a detention hearing was held before the Honorable Magistrate Judge Carol Mirando. At the detention hearing, the Government was represented by Assistant United States Attorney Michael Bagge-Hernandez. Assistant Public Defender Martin Der Ovanesian represented Defendant, who was present.

### BACKGROUND

On May 8, 2015, the undersigned reviewed a Complaint (Doc #1) and signed an arrest warrant (Doc. #2) for Defendant. On May 11, 2015, Defendant was brought before

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Judge Mirando for an Initial Appearance. (Doc. #3). Thereafter, on May 13, 2015, a Grand Jury indicted Defendant on one count of transporting illegal aliens for the purpose of financial gain. (Doc. #12). Defendant appeared before United States Magistrate Judge Carol Mirando on May 14, 2015, for an arraignment and detention hearing. (Doc. #18). The Government asked for detention arguing that Defendant was both a risk of flight and a danger to the community. The Defendant argued that Defendant was not a risk of flight nor was he a danger to the community and that reasonable conditions of bond could be set. After the Court heard argument, Judge Mirando granted Defendant's release on $25,000.00 unsecured bond. (Doc. #18). The Government now appeals that decision. (Doc. #23).

## DISCUSSION

The Government argues that the Magistrate Judge's Order releasing Defendant on bond should be overturned because he is a risk of flight. Conversely, Defendant contends the Magistrate Judge's conditions were appropriate in this case, and that Defendant has complied with all the conditions thus far.

When requested, the district court must promptly undertake an evaluation of the propriety of a magistrate judge's pre-trial detention order. U.S. v. Arevalo, No. 8:12-cr-538-T-17MAP, 2013 WL 625041, *2 (M.D. Fla. February 19, 2013) (citing U.S. v. King, 849 F.2d 485 (11th Cir.1988)). A district court reviews *de novo* a magistrate judge's pre-trial release order. U.S. v. Megahed, 519 F.Supp.2d 1236, 1241 -1242 (M.D. Fla. 2007) (citing U.S. v. Hurtado, 779 F.2d 1467, 1481 (11th Cir.1985)). Review by the district court contemplates an "independent consideration of all facts properly before it," Megahed, 519 F.Supp.2d at 1241 (citing U.S. v. Gaviria, 828 F.2d 667, 670 (11th Cir.1987) (citing

Hurtado, 779 F.2d at 1480-81)). If the district court concludes after a careful review that the magistrate judge's findings of facts were based on both the parties' papers and the evidence presented at the detention hearing, and the magistrate judge correctly applied the law, "[t]he court may then explicitly adopt the magistrate's pre-trial [release] order." U.S. v. King, 849 F.2d 485, 490 (11th Cir.1988). However, if necessary to the resolution of an essential issue of fact, the district court may marshal further evidence by convening a hearing. Megahed, 519 F.Supp.2d at 1242.

In this particular instance, the Court did not simply rely on the record before the Magistrate Judge, but instead conducted a *de novo* review of the matter by reviewing the entire docket, the papers filed by the parties, and the transcript of the hearing held before Magistrate Judge Mirando on May 14, 2015. U. S. v. Arredondo, No. 96-247-CR-T-17B, 1996 WL 521396, at *3–4 (M.D. Fla. Sept. 11, 1996) (reversing magistrate judge's conditional order of release after conducting a *de novo* review); U.S. v. Ippolito, 930 F.Supp. 581, 582 (M.D. Fla.1996) (same).

The policy underlying the Bail Reform Act "is to permit release under the least restrictive condition compatible with assuring the future appearance of the defendant." U.S. v. Price, 773 F.2d 1526, 1527 (11th Cir.1985) (per curiam). When the United States seeks to detain a criminal defendant pending trial based on his status as a flight risk, it must prove by a preponderance of the evidence that no condition or set of conditions will reasonably assure his presence at trial. U.S. v. Ramos, No. 14-80052-CR, 2014 WL 1515264, *1 (S.D. Fla. April 7, 2014) (citing U.S. v. Medina, 775 F.2d 1398, 1402 (11th Cir.1985)). By contrast, where the Government seeks to detain a defendant based on a contention that he is a danger to the community, it must show by clear and convincing

3

evidence that no condition or combination of conditions will reasonably assure the safety of the community. Id. In the instant matter, the Government is no longer contending that Defendant poses a threat of danger, therefore, the Court need not review the evidence in that regard, however, this Court does not believe that the Defendant poses a threat of danger to the community.

This Court now turns to the issue of whether or not the Defendant poses a risk of flight. Pursuant to 18 U.S.C. § 3142(g), there are several factors the Court shall consider in determining whether there are conditions of release that will reasonably assure the appearance of the person as required. Those factors to be considered are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of *section 1591,* a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
> (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (b) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c) (1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to

>     accept the designation, or the use as collateral, of property
>     that, because of its source, will not reasonably assure the
>     appearance of the person as required.

The Court will review the factors to determine Defendant's risk of flight under the preponderance of the evidence standard and how they impact the Government's Motion for Revocation, seeking to overturn the Magistrate Judge's Order releasing Defendant.

This Court is familiar with the facts and circumstances surrounding the arrest as it reviewed and signed the Complaint in this matter. ([Doc. # 1 at 1](#)). On May 7, 2015, Defendant was pulled over by the Lee County Sherriff's Office ("LCSO") for driving erratically on Interstate 75 near mile marker 137. ([Doc. #1 at 2](#)). When the LCSO officer approached the passenger side of the Defendant's vehicle, he identified Defendant as the erratic driver. ([Doc. #1 at 2-3](#)). While Defendant searched for his driver's license, the LCSO officer looked in the vehicle and noticed that there were six Hispanic passengers, who "all looked extremely nervous and scared." ([Doc. #1 at 3](#)). Eventually, Defendant produced a Texas commercial driver's license. ([Doc. #1 at 2-3](#)). While running a check on the license, the LCSO officer engaged in small talk with Defendant, who initially explained that he was driving from Texas to West Palm Beach to see his family and that the six passengers in the vehicle were part of his family. ([Doc. #1 at 3](#)). Defendant then became nervous and changed his story, stating that the six passengers were just friends. ([Doc. #1 at 3](#)).

Soon after, the LCSO officer called for a Spanish-speaking officer to assist with the traffic stop. ([Doc. #1 at 3](#)). Once the Spanish-speaking LCSO officer arrived, Defendant explained that the passengers were his friends and admitted that they were "all illegal." ([Doc. #1 at 3](#)). The Spanish-speaking LCSO officer then talked with a few of the passengers who admitted that they had illegally entered the country that they paid

Defendant to transport them to Florida.  (Doc. #1 at 3-4). With this knowledge in hand, the LCSO officers contacted the U.S. Immigration and Customs Enforcement ("ICE") and Homeland Security Investigations ("HSI"), who interviewed the remaining passengers. (Doc. #1 at 4).  All of the remaining passengers admitted that they too had entered the country illegally and paid Defendant to transport them to Florida, primarily from Texas. (Doc. #1 at 4-6). Based on these facts, the Court determines that the evidence against Defendant is great.

The Government avers not only that Defendant admitted that the six passengers in his car were illegal aliens, but also that many of the passengers themselves admitted that they were illegal aliens and that they had paid Defendant to transport them from Texas to Florida.  The Government further alleges that on the way to the initial appearance hearing, Defendant instructed one of the alien passengers to "obstruct justice and only tell law enforcement that he gave [him] a ride."  This additional fact does not weigh in Defendant's favor as it appears that he was obstructing justice so as to diminish the evidence against him.  Defendant does not attempt to dispute any of these facts, but instead points the Court's attention to the fact that the nature of the offense, when combined with the sentencing guidelines, results in a sentence range that is much lower than what the Court typically encounters.  The Court, however, finds that this argument does not diminish the fact that the evidence against Defendant is great.

The "history and characteristic of the person" factor does not weigh in Defendant's favor either.  Defendant is a Cuban national, who obtained lawful permanent resident status after immigrating to the United States in 2005.  The Defendant's father and two sisters still remain in Cuba. At the time of his arrest, the Defendant was in possession of

a passport. At the hearing, Defendant admitted that he resides outside the Middle District of Florida in West Palm Beach, Florida, with his wife and two children. Both Defendant and his family have resided in the West Palm Beach area since he arrived in the United States. He does not own his own home, but rather rents a home with his family in the Southern District of Florida. He has been living in his current rental for the past year. The Defendant has no ties to the Fort Myers area. Therefore, the Court finds the Defendant lacks ties to the relevant community in this case – the Middle District of Florida.

Defendant attempts to counter these facts by first noting that because his family resides with him and supports him, he is less likely to attempt flight. Next, Defendant points out that his home in West Palm Beach, Florida, is closer than some cities included in this district. The Court finds these arguments unpersuasive. To begin, because Defendant rents his home, he is not anchored to Florida, and can freely leave the state with minimal recourse. Moreover, even though Defendant's residence might be closer than one city in the Middle District, the fact remains that Middle District of Florida is the relevant community in this action. See U.S. v. Alverez-Lopez, No. 2:14-cr-45-FtM-38CM, 2014 WL 2563646, *3 (M.D. Fla. June 6, 2014) ("In the federal system, courts look to the ties of the defendant to the judicial district in which the criminal charges have been brought.") (citation omitted).

Defendant also appears to have no financial ties to the Middle District of Florida either. Defendant contended that he had a job in Texas as a trucker for one month, but declined to provide either Pretrial Services or Judge Mirando with the name of his employer.[2] Prior to that, the Pretrial Services Report indicates the Defendant had a job

---

[2] At the hearing, Defendant asserted that he did not want to name his employer as it may reflect on the pending charges. Defendant represented that he might be able to secure a job in West Palm Beach as a

for six months at another trucking company. These jobs caused the Defendant to be in Texas away from the West Palm Beach area for weeks at a time. Although Defendant can assert his Fifth Amendment rights, he cannot then claim that the Court should ignore the fact that there is no evidence of a verifiable, legal employment history. Because there is no identifiable or verifiable employment history, this bolsters the conclusion that Defendant is a risk of flight as he has no financial ties to relevant community either. This also causes the Court concern as to the Defendant's attendance at future court appearances

Finally, there are two additional facts that do not weigh in Defendant's favor. First, when Defendant was arrested, he was in possession of three different forms of identification: a Florida ID card, and two driver's licenses from other states – Texas and Colorado. Defendant failed to address this fact in his Response. But it is clear that Defendant has the ability to procure identification, which solidifies the Court's concern that he is a risk of flight.

Second, the Court notes that Defendant was convicted of failing to appear in a Florida state case for Cultivation of Cannabis,Trafficking in Cannabis – Over 25 pounds, Grand Theft, and Conspiracy to Traffic in Cannabis. Although the underlying charges were dropped, the Defendant served 323 days in jail and received two years of probation for failure to appear. This contributes to the Court's finding that the Defendant is a risk of flight.

---

security camera installer, but he was unable to provide any details about a definite employment arrangement at that time. In his Response, Defendant remains unable to provide any details to the Court about a definite employment arrangement, and instead avers that he is "currently working on issues regarding employment."

After considering the weight of the evidence against Defendant, Defendant's lack of ties to the Middle District of Florida, Defendant's lack of verifiable employment, Defendant's ability to procure identification documents from different states, and Defendant's previous conviction for failing to appear, the Court finds that the Government established, by the preponderance of the evidence, that no condition or set of conditions will reasonably assure Defendant's presence at trial.  Thus, the Court finds that Defendant is a risk of flight.  As such, the Government's Motion is due to be granted and the Magistrate Judge's Order releasing Defendant on $25,000.00 unsecured bond is due to be revoked.

Accordingly, it is now

**ORDERED:**

(1) The United States of America's Motion for Revocation of the Magistrate Judge's Order Granting Conditions of Release ([Doc. #23](#)) is **GRANTED**.

(2) Magistrate Judge Mirando's Order releasing Defendant, Yohany Hernandez-Hernandez, is **REVOKED**.

(3) Defendant Yohany Hernandez-Hernandez is remanded to the custody of the U.S. Marshals Service and ordered detained pending further proceedings.

(4) Defendant Yohany Hernandez-Hernandez is directed to turn himself in to United States Probation Officer Ken Golderberg's, United States Probation Office, West Palm Beach, Florida, custody on or before Friday, May 22, 2015, at 4 p.m.

**DONE AND ORDERED** at Fort Myers, Florida, this 22nd day of May, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record